Loan No.  107655402401

## PROMISSORY NOTE
## (FIXED)

Willowbrook, Illinois

### LOAN TERMS TABLE

| | |
|---|---|
| Note Date: | As of February 7, 2013 |
| Borrower: | **CHICAGO TITLE LAND TRUST COMPANY AS TRUSTEE UNDER TRUST DATED JANUARY 4, 2000 AND KNOWN AS TRUST NO. 1107968** |
| Borrower Address: | 10 S. LaSalle Street, Suite 2750, Chicago, Illinois 60603 |
| Original Principal Amount: | Four Hundred Fifty Thousand and 00/100 Dollars ($450,000) |
| Applicable Interest Rate: | First through Fifth Loan Years - Four and Seventy-Five Hundredths Percent (4.75%)<br><br>Sixth through Tenth Loan Years - Adjusts per Article 12 |
| Monthly Payment Amount: | First through Fifth Loan Years - Two Thousand Five Hundred Eighty-Two and 93/100 Dollars ($2,582.93)<br><br>Sixth through Tenth Loan Years - Adjusts per Article 12 |
| Maturity Date: | March 1, 2023 |
| Initial Payment Date: | April 1, 2013 |
| Scheduled Payment Date: | First day of each calendar month |
| Prepayment Consideration: | First through Fifth Loan Years -<br>Five Percent (5%) of the Unscheduled Principal Amount if prepayment occurs during the first Loan Year;<br>Four percent (4%) of the Unscheduled Principal Amount if prepayment occurs during the second Loan Year;<br>Three Percent (3%) of the Unscheduled Principal Amount if prepayment occurs during the third Loan Year;<br>Two Percent (2%) of the Unscheduled Principal Amount if prepayment occurs during the fourth Loan Year and<br>One Percent (1%) of the Unscheduled Principal Amount if prepayment occurs during the fifth Loan Year<br><br>Sixth through Tenth Loan Years - Adjusts per Article 12 |

FOR VALUE RECEIVED, Borrower hereby unconditionally promises to pay to the order of **CATHAY BANK**, a California banking corporation, having an address at 222 W. Cermak Road, Chicago, Illinois 60616 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the Original Principal Amount and all other amounts due or becoming due hereunder in lawful money of the United States of America, with interest

EXHIBIT
1

thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in installments as follows:

## ARTICLE 1: PAYMENT TERMS

(a)     A payment of interest from the date hereof through the last day of the current month shall be paid on the date hereof;

A constant payment of the Monthly Payment Amount on the Initial Payment Date and on each Scheduled Payment Date thereafter up to and including the Maturity Date and the balance of the principal sum and all interest thereon shall be due and payable on the Maturity Date. Each of the payments to be applied as follows: (i) first, to the payment of interest computed at the Applicable Interest Rate; and (ii) the balance toward the reduction of the principal sum. The Monthly Payment Amount is based upon a twenty-five (25) year amortization.

## ARTICLE 2: INTEREST

The Note shall bear interest at the Applicable Interest Rate. Interest on the principal sum of this Note shall be calculated on the basis of a three hundred sixty (360) day year calculated by multiplying the actual number of days elapsed in the period for which such interest is payable by a daily rate based on said three hundred sixty (360) day year.

## ARTICLE 3: DEFAULT AND ACCELERATION

(a)     (i) The whole of the outstanding principal sum of this Note, (ii) interest, default interest, late charge, prepayment charges and other sums, as provided in this Note, the Loan Agreement or the other Loan Documents (as such terms are hereinafter defined), (iii) all other monies agreed or provided to be paid by Borrower in this Note, the Loan Agreement or the other Loan Documents, (iv) all sums advanced pursuant to the Loan Agreement or the other Loan Documents to protect and preserve the Property (as defined in the Security Instrument, as hereinafter defined) and the lien and the security interest created thereby, and (v) all sums advanced and costs and expenses incurred by Lender in connection with the Debt (as hereinafter defined) or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender (the sums referred to in (i) through (v) above, collectively, the "Debt") shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid when due or on the Maturity Date or on the happening of any other default, after the expiration of any applicable notice and grace periods, herein or under the terms of the Loan Agreement or any of the Other Loan Documents (collectively, an "Event of Default").

(b)     Unless payments are made in the amount and as required hereunder, remittances in payment of all or any part of the Debt shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Lender in funds immediately available as specified herein and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the

2

amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount when due shall be and continue to be an Event of Default.

## ARTICLE 4:  DEFAULT INTEREST

Borrower does hereby agree that upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid outstanding principal sum at a per annum rate equal to the lesser of (a) the sum of the Applicable Interest Rate and five percent (5%) or (b) the maximum interest rate which Borrower may by law pay (the "Default Rate").  The Default Rate shall be computed from the occurrence of the Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Debt is paid in full.  Interest calculated at the Default Rate shall be added to the Debt and shall be deemed secured by the Security Instrument.  This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

## ARTICLE 5:  PREPAYMENT

(a)    Borrower may prepay the principal balance of this Note in whole but not in part upon not less than thirty (30) and not greater than sixty (60) days prior written notice to Lender specifying the date of prepayment ("Prepayment Date") and upon payment of (i) all accrued interest to and including the Prepayment Date, (ii) all interest which would have accrued on the principal balance from the Prepayment Date to and including the immediately following Scheduled Payment Date, (iii) all other sums due under this Note, the Loan Agreement and the other Loan Documents, and (iv) an amount equal to the Prepayment Consideration.

(b)    In the event of any involuntary prepayment of the Loan or any other amount under this Note, whether in whole or in part, in connection with or following Lender's acceleration of this Note or otherwise, and whether the Security Instrument is satisfied by release or foreclosure or by any other means, Borrower shall in addition to any portion of the principal balance of the Loan being prepaid, pay (i) all accrued interest to and including the date of repayment, (ii) all interest which would have accrued on the principal balance from the date of repayment to and including the immediately following Scheduled Payment Date, (iii) all other sums due under this Note, the Loan Agreement and the other Loan Documents, and (iv) an amount equal to the Prepayment Consideration.

(c)    Notwithstanding any other provision to the contrary and provided no Event of Default exists, there shall be no Prepayment Consideration in connection with any prepayment occurring solely as a result of (i) the application of Insurance Proceeds or Awards pursuant to the terms of the Loan Documents (ii) a prepayment of not more than ten percent (10%) of the outstanding principal once during any Loan Year or (iii) a repayment or prepayment of the Loan by a loan from Lender, (iv) repayment to comply with Debt Service Coverage Ratio, and (v) prepayment to maintain loan to value ratio.

{F:/wpdocs/2954/12286/00220991.DOC;}

## ARTICLE 6:  SECURITY

This Note is secured by the a Loan Agreement by and between Lender and Borrower dated as of the date hereof (the "Loan Agreement") and a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of the date hereof, given by Borrower to Lender, encumbering Borrower's interest in that certain property as more particularly described therein (the "Security Instrument") and all and any of the documents other than this Note and the Loan Agreement now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guaranty payment of this Note. References to this Note, the Loan Agreement and the other Loan Documents shall mean such instruments as each of the same may be amended, modified, extended, renewed, restated, consolidated, substituted, supplemented or replaced from time to time.

## ARTICLE 7:  SAVINGS CLAUSE

It is the intention of Borrower and Lender to conform strictly to the usury and similar laws relating to interest from time to time in force, and all agreements between Lender and Borrower, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by acceleration of maturity hereof or otherwise, shall the amount paid or agreed to be paid in the aggregate to Lender as interest hereunder, under the Loan Agreement or under the other Loan Documents exceed the maximum permissible under applicable usury or such other laws (the "Maximum Amount").  If from any possible construction of any document, interest would otherwise be payable hereunder, under the Loan Agreement or under the other Loan Documents in excess of the Maximum Amount, or in the event for any reason whatsoever any payment by or act of Borrower pursuant to the terms or requirements hereof, of the Loan Agreement or of the other Loan Documents shall result in the payment of interest which would exceed the Maximum Amount, then any such construction shall be subject to the provisions of this Article, and ipso facto such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that the obligation of Borrower to pay interest or perform such act or requirement shall be reduced to the limit authorized under the applicable laws, and in no event shall Borrower be obligated to pay any interest, perform any act, or be bound by any requirement which would result in the payment of interest in excess of the Maximum Amount. Any amount received by Lender in excess of the Maximum Amount shall, without further agreement or notice between or by any party hereto, be deemed applied to reduce the principal sum hereof immediately upon receipt of such moneys by Lender, with the same force and effect as though Borrower had specifically designated such sums to be applied to principal prepayment. The provisions of this Article shall supersede any inconsistent provision of this Note, the Loan Agreement or any other Loan Document.

## ARTICLE 8:  LATE CHARGE

If any sum payable under this Note is not paid prior to the tenth day after the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of the unpaid sum or the maximum amount permitted by applicable law, but not less than Twenty-Five and 00/100 Dollars ($25.00), to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss

of the use of the delinquent payment.  The amount thereof shall be secured by the Security
Instrument and the other Loan Documents.

## ARTICLE 9:  WAIVERS

Borrower and all others who may become liable for the payment of all or any part
of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor,
protest and notice of protest and non-payment and all other notices of any kind.  No release of
any security for the Debt or extension of time for payment of this Note or any installment hereof,
and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the
other Loan Documents made by agreement between Lender or any other person or party shall
release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of
Borrower, and any other person or entity who may become liable for the payment of all or any
part of the Debt, under this Note, the Loan Agreement or the other Loan Documents.  No notice
to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the
right of Lender to take further action without further notice or demand as provided for in this
Note, the Loan Agreement or the other Loan Documents.

## ARTICLE 10: MISCELLANEOUS PROVISIONS

(a)    Severability.  Whenever possible, each provision of this Note shall be
interpreted in such a manner as to be effective and valid under applicable law, but if any
provision hereof shall be prohibited by or invalid or unenforceable under the applicable law of
any jurisdiction with respect to any Person or circumstance, such provision shall be ineffective to
the extent of such prohibition, invalidity or unenforceability, without invalidating the remaining
provisions hereof or affecting the validity or enforceability of such provisions in any other
jurisdiction or with respect to other Persons or circumstances.   To the extent permitted by
applicable law, the parties hereto hereby waive any provision of law that renders any provision
hereof prohibited, invalid or unenforceable in any respect.

(b)    Remedies Not Exclusive.  No remedy herein conferred upon or reserved to
Lender is intended to be exclusive of any other remedy or remedies available to Lender under
this Note, at law, in equity or by statute, and each and every such remedy shall be cumulative
and in addition to every other remedy given hereunder or now or hereafter existing at law, in
equity or by statute.

(c)    Liability.  If Borrower consists of more than one Person, the obligations
and liabilities of each such Person hereunder shall be joint and several.

(d)    No Oral Modifications.  This Note, and any of the provisions hereof,
cannot be altered, modified, amended, waived, extended, changed, discharged or terminated
orally or by any act on the part of Borrower or Lender, but only by an agreement in writing
signed by the party against whom enforcement of any alteration, modification, amendment,
waiver, extension, change, discharge or termination is sought.

(e)    Waiver of Jury Trial.  BORROWER AND LENDER, TO THE FULL
EXTENT PERMITTED BY LAW, EACH KNOWINGLY, INTENTIONALLY AND
VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL,

5

WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, BROUGHT BY EITHER OF THEM AGAINST THE OTHER BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO OR IN CONNECTION WITH THIS NOTE, THE LOAN OR ANY COURSE OF CONDUCT, ACT, OMISSION, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SUCH PERSON'S DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH SUCH PERSON), IN CONNECTION WITH THE LOAN OR THIS NOTE. THIS WAIVER BY BORROWER OF ITS RIGHT TO A JURY TRIAL IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN.

(f)     No Waivers by Lender. No delay or omission of Lender in exercising any right or power accruing upon any default under this Note shall impair any such right or power or shall be construed to be a waiver of any default under this Note or any acquiescence herein, nor shall any single or partial exercise of any such right or power or any abandonment or discontinuance of steps to enforce such right or power, preclude any other or further exercise hereof or the exercise of any other right or power. Acceptance of any payment after the occurrence of a default under this Note shall not be deemed to waive or cure such default under this Note; and every power and remedy given by this Note to Lender may be exercised from time to time as often as may be deemed expedient by Lender. Borrower hereby waives any right to require Lender at any time to pursue any remedy in Lender's power whatsoever.

(g)     Waiver of Notice. Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Note specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not, pursuant to applicable legal requirements, permitted to waive the giving of notice. Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Note does not specifically and expressly provide for the giving of notice by Lender to Borrower.

(h)     Time of the Essence. Time shall be of the essence in the performance of all obligations of Borrower hereunder.

(i)     Governing Law. This Note shall be governed by, and construed in accordance with, the laws of the State of Illinois, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling.

(j)     Notices. All notices or written communications shall be given in accordance with the Loan Agreement.

(k)     Definitions. All capitalized terms used in this Note but not defined shall have the meaning as set forth in the Loan Agreement.

6

## ARTICLE 11:  AUTHORITY

Borrower (and the undersigned representative of Borrower, if any) represents and warrants that it has full power and authority to execute and deliver this Note, and the execution and delivery of this Note has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower.

## ARTICLE 12: RATE ADJUSTMENT

(a)     Borrower shall elect the Applicable Interest Rate for the Sixth through Tenth Loan Year by delivering a written election to Lender specifying the interest rate on or before March 1, 2018, provided that there is no Event of Default.

(b)     Borrower may elect for the Applicable Interest Rate of either a fixed rate or a floating rate of the then Wall Street Journal Prime Rate on March 1, 2018 plus one and zero hundredths percent (1.00%), but not less than four and seventy-five hundredths percent (4.75%). The floating rate shall float throughout the term of the Loan.

(c)     The Monthly Payment Amount shall be recalculated by Lender on the first (1st) day of the Sixth Loan Year based upon the Applicable Interest Rate then in effect.  The term "Monthly Payment Amount" as used herein shall mean a monthly payment of principal and interest sufficient to (i) pay interest on the then outstanding principal balance of this Note at the Applicable Interest Rate, and (ii) amortize the then outstanding principal balance of this Note over an amortization period of twenty-five (25) years reduced by the period of time since the date of this Loan.

(d)     In the event that Borrower fails to timely make the election, the Applicable Interest Rate shall be the floating rate of the then Wall Street Journal Prime Rate on March 1, 2018 plus one and zero hundredths percent (1.00%), but not less than four and seventy-five hundredths percent (4.75%), as of the first day of the Sixth Loan Year fixed for the remainder of the Loan term.

(e)     The Prepayment Consideration shall be for the Sixth through Tenth Loan year (i) for a fixed Applicable Interest Rate – five percent (5%) of the Unscheduled Principal Amount during the sixth Loan Year; four percent (4%) of the Unscheduled Principal Amount during the seventh Loan Year; three percent (3%) of the Unscheduled Principal Amount during the eighth Loan Year, two percent (2%) of the Unscheduled Principal Amount during the ninth Loan Year, and one percent (1%) of the Unscheduled Principal Amount during the tenth Loan Year, and (ii) for a floating Applicable Interest Rate - no Prepayment Consideration.

(f)     Borrower shall execute such documents, amendments or modifications as Lender shall request to evidence the adjustment of the interest rate and the monthly payment amount.

(g)     The term "Wall Street Journal Prime Rate" shall mean the rate as published by Wall Street Journal Midwest Edition from time to time in the Money Rates section in effect from day to day.  The Applicable Interest Rate may change each day, but not more than once per day.

{F:/wpdocs/2954/12286/00220991.DOC;}

(h)     The term "Business Day" shall mean a day on which commercial banks are not authorized or required by law to close in Chicago, Illinois.

(i)     The term "Loan Year" shall mean each 365 or 366, as applicable, day period after the first day of the first calendar month after the date of this Note (or the date of this Note if it is dated the first day of a calendar month).

(j)     Interest on the principal sum of this Note shall be calculated on the basis of a three hundred sixty (360) day year calculated by multiplying the actual number of days elapsed in the period for which such interest is payable by a daily rate based on said three hundred sixty (360) day year.

(k)     This Note shall bear interest at the then current Applicable Interest Rate until a new Wall Street Journal Prime Rate is determined in accordance with the provisions hereof; provided, however, that if Lender at any time determines in its sole discretion that it has miscalculated the amount of the Monthly Payment Amount (whether because of a miscalculation of the Wall Street Journal Prime Rate or otherwise), Lender shall give notice to Borrower of the corrected amount of such Monthly Payment Amount (and the corrected amount of the Wall Street Journal Prime Rate, if applicable) and (a) if the corrected amount of such Monthly Payment Amount represents an increase thereof, then Borrower shall, within ten (10) calendar days thereafter, pay to Lender any sums that Borrower otherwise would have been obligated under this Note to pay to Lender had the amount of such Monthly Payment Amount not been miscalculated, or (b) if the corrected amount of such Monthly Payment Amount represents an decrease thereof and Borrower is not otherwise in default under any of the terms and provisions of the Note or the Security Instrument, then Borrower shall, within (10) calendar days thereafter, be paid the sums that Borrower otherwise would not have been obligated to pay to Lender had the amount of such monthly payment not been miscalculated.

(l)     The Wall Street Journal Prime Rate may not be the lowest rate offered or actually charged by Lender. If the Wall Street Journal Prime Rate shall cease to be available or published, Lender shall select another interest rate which in Lender's sole discretion is a comparable interest rate.

8

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first above written.



BORROWER:

CHICAGO TITLE LAND TRUST COMPANY
NOT PERSONALLY BUT AS TRUSTEE UNDER
TRUST DATED JANUARY 4, 2000 AND
KNOWN AS TRUST NO. 1107968

By: _____

Name: _Kelli A. Beyer_____

Its: _____ASST. VICE PRESIDENT_____

This instrument is executed by the undersigned Land Trustee, not personally but solely as Trustee in the exercise of the power and authority conferred upon and vested in it as such Trustee. It is expressly understood and agreed that all the warranties, indemnities, representations, covenants, undertakings and agreements herein made on the part of the Trustee are undertaken by it solely in its capacity as Trustee and not personally. No personal liability or personal responsibility is assumed by or shall at any time be asserted or enforceable against the Trustee on account of any warranty, indemnity, representation, covenant, undertaking or agreement of the Trustee in this instrument.

{F:/wpdocs/2954/12286/00220991.DOC;}

[ACKNOWLEDGMENT]

STATE OF _ILLINOIS_ )
                    )SS
COUNTY OF _COOK_ )

     I, the undersigned, a notary public, in and for the county and state aforesaid, DO HEREBY CERTIFY, that _Kelli A. Beyer_____, personally known to me to be the _____ASST. VICE PRESIDENT_____ of CHICAGO TITLE LAND TRUST COMPANY AS TRUSTEE UNDER TRUST DATED JANUARY 4, 2000 AND KNOWN AS TRUST NO. 1107968, and personally known to me to be the same person whose name is subscribed to within the Document, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument as his/her free and voluntary act and deed of said trustee, for the uses and purposes therein set forth.

     Given under my hand and official seal this _5TH_ day of February, 2013.

"OFFICIAL SEAL"
SILVIA MEDINA
Notary Public, State of Illinois
My Commission Expires 06/26/2016

_Silvia Medina_
Notary Public

10

THIS INSTRUMENT WAS
PREPARED BY AND UPON
RECORDATION RETURN TO:

Wolin & Rosen, Ltd.
55 W. Monroe Street, Suite 3600
Chicago, IL 60603
Attention:  Charles J. Mack



**FRED BUCHOLZ**
DUPAGE COUNTY RECORDER
FEB.13,2013          RHSP    10:50 AM
OTHER               09-26-402-011
**018 PAGES**   **R2013-023862**

(Space Above For Recorder's Use)

**CHICAGO TITLE LAND TRUST COMPANY AS TRUSTEE UNDER TRUST DATED**
**JANUARY 4, 2000 AND KNOWN AS TRUST NO. 1107968, as Borrower**

to

**CATHAY BANK, as Lender**

**MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

COLLATERAL IS OR INCLUDES FIXTURES

| | |
|---|---|
| Dated: | As of February 7, 2013 |
| Property Address: | 7882-7890 Quincy Street, Willowbrook |
| Tax Parcel: | 09-26-402-011 |
| County: | DuPage |
| State: | Illinois |
| Loan No.: | 107655402401 |

{F:/wpdocs/2954/12286/00221007.DOC:}

CHARGE CTIC DUPAGE

BOX 334 CTI

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Security Instrument") is made as of February 7, 2013, by CHICAGO TITLE LAND TRUST COMPANY AS TRUSTEE UNDER TRUST DATED JANUARY 4, 2000 AND KNOWN AS TRUST NO. 1107968 ; an Illinois land trust, having an address at 10 S. LaSalle Street, Suite 2750, Chicago, Illinois 60603 ("Borrower"), to CATHAY BANK, a California banking corporation, having an address at 222 W. Cermak Road, Chicago, Illinois 60616 ("Lender").

## WITNESSETH:

WHEREAS, Borrower has requested that Lender make a loan to Borrower in the aggregate principal amount of FOUR HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($450,000) (the "Loan");

WHEREAS, Lender and Borrower have entered into a Loan Agreement dated of even date herewith (the "Loan Agreement"). Capitalized terms used but not defined shall have the meaning set forth in the Loan Agreement;

WHEREAS, Lender has agreed to make the Loan to Borrower upon, and subject to, the terms and conditions set forth herein and in the other Loan Documents;

WHEREAS, concurrently herewith, Borrower has delivered to Lender its Promissory Note of even date herewith in the amount of the Loan (as the same may hereafter from time to time be modified, amended, replaced, restated, supplemented, renewed, or extended, and any note(s) issued in exchange therefor or in substitution thereof, collectively, the "Note") in evidence of the Loan, with interest from the date hereof at the rates set forth in the Note, such interest and the principal amount thereof to be payable in accordance with the terms and conditions provided in the Note;

WHEREAS, the Note is due and payable on March 1, 2023, if not sooner in accordance with the terms and conditions thereof; and

WHEREAS, Borrower desires to secure the payment of the Debt and the performance of all of the Obligations (as hereinafter defined).

NOW THEREFORE, in consideration of the making of the Loan and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Borrower hereby agrees, covenants, represents and warrants with and to Lender as follows:

### Article 1 - GRANTS OF SECURITY

Section 1.1   PROPERTY MORTGAGED.   Borrower does hereby irrevocably mortgage, grant, bargain, pledge, assign, warrant, transfer and convey to Lender, and grant a security interest to Lender in all of Borrower's right, title and interest in and to the following property, rights, interests and estates now owned or hereafter acquired by Borrower, whether now existing or hereafter created (collectively, the "Property"):

{F:/wpdocs/2954/12286/00221007.DOC;}

(a)    <u>Land</u>.  The real property described in <u>Exhibit A</u> attached hereto and made a part hereof (the "<u>Land</u>");

(b)    <u>Additional Land</u>.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

(c)    <u>Improvements</u>.  All buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (the "<u>Improvements</u>");

(d)    <u>Easements</u>.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land or the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land to the center line thereof, and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)    <u>Fixtures and Personal Property</u>.  All machinery, equipment as such term is defined in Article 9 of the Uniform Commercial Code, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land or the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Land or the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land or the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Land or the Improvements (collectively, the "<u>Personal Property</u>"), and all proceeds and products of the above;

(f)    <u>Leases and Rents</u>.  All leases, subleases and other agreements affecting the use, enjoyment or occupancy of all or any portion of the Land or the Improvements heretofore or hereafter entered into (the "<u>Leases</u>"), whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code, and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or other collateral deposited to secure the performance by the lessees of their obligations thereunder; and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against

2

FRED BUCHOLZ        R2013-023862        DUPAGE COUNTY RECORDER

Borrower of any petition for relief under the Bankruptcy Code (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents;

(g)   Condemnation Awards.   All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(h)   Insurance Proceeds.   All insurance proceeds in respect of the Property under insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(i)   Tax Certiorari.   All refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction, whether arising or accruing before or after the date hereof;

(j)   Rights.   The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(k)   Agreements.   All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management and operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(l)   Trademarks.   All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, signage, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(m)   Accounts.   All deposits, reserves, escrows and accounts of Borrower made with or for the benefit of Lender under any of the Loan Documents; and

(n)   Other Rights; Replacements and Conversions.   Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (m) above and all renewals, substitutions, improvements, accessions, attachments, additions, replacements and all proceeds (whether cash or non-cash, movable or immovable, tangible or intangible) to or of each of the items set forth in Subsections (a) through (m) above, including without limitation, all insurance proceeds and condemnation awards, and all conversions of the security constituted thereby (whether voluntary or involuntary and in whatever form).

3

{F:/wpdocs/2954/12286/00221007.DOC;}

Section 1.2   ASSIGNMENT OF RENTS.   Borrower hereby absolutely and unconditionally assigns to Lender Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of this Section 1.2, Lender grants to Borrower a revocable license to collect and receive the Rents.  Borrower shall hold a sufficient portion of the Rents in trust for the benefit of Lender to discharge all current sums due on the Debt.

Section 1.3   SECURITY AGREEMENT; FIXTURE FILING.   (a) This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code as adopted and enacted by the State or Commonwealth where the Borrower is located (as amended, modified or replaced from time to time, the "UCC").  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  Borrower hereby grants to Lender, as security for the Obligations, a security interest in the Property to the full extent that the Property may be subject to the UCC (said portion of the Property so subject to the UCC, the "UCC Collateral").  Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing, continuation or other statements signed only by Lender, as secured party, in connection with the UCC Collateral.

(b)   From the date of its recording, this Security Instrument further constitutes a financing statement filed as a fixture filing and covers goods which are or are to become fixtures on the Property.  For this purpose, Borrower is the "Debtor," and its name and mailing address are set forth in the preamble of this Security Instrument.  Lender is the "Secured Party," and its name and mailing address also are set forth in the preamble of this Security Instrument.  This document covers goods which are or are to become fixtures and personal property.  The statement describing the portion of the Property comprising the fixtures and personal property secured hereby is set forth as Section 1.1(e) of this Security Instrument.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender, and the successors and assigns of Lender forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Note and this Security Instrument, shall well and truly perform the other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void.

## Article 2 - DEBT AND OBLIGATIONS SECURED

Section 2.1   DEBT.   This Security Instrument and the grants, assignments and transfers made herein are given for the purpose of securing the Debt.

4

Section 2.2    OBLIGATIONS.    This Security Instrument and the grants, assignments and transfers made herein are also given for the purpose of securing the performance of the following (the "Other Obligations"): (a) all other obligations of the Borrower under this Security Instrument, (b) each obligation of Borrower contained in the Loan Agreement and any other Loan Documents, and (c) each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation or substitution or replacement for the Note, the Loan Agreement or any other Loan Documents.    Borrower's obligation for payment of the Debt and the performance of the Other Obligations shall be referred to collectively as the "Obligations."

## Article 3 - BORROWER COVENANTS

Borrower covenants and agrees that:

Section 3.1    PAYMENT OF DEBT.    Borrower will pay the Debt at the time and in the manner provided in the Note and the other Loan Documents.

Section 3.2    INCORPORATION BY REFERENCE.    All the covenants, conditions and agreements contained in (a) the Note, (b) the Loan Agreement, and (c) any and all of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

Section 3.3    PERFORMANCE OF OTHER AGREEMENTS.    Borrower shall observe and perform each and every term to be observed or performed by Borrower pursuant to the terms of any agreement or recorded instrument affecting or pertaining to Borrower or the Property, or given by Borrower to Lender for the purpose of further securing an Obligation and any amendments, modifications or changes thereto.

Section 3.4    INSURANCE PROCEEDS AND CONDEMNATION AWARDS.

(a)    Borrower shall obtain and maintain or cause to be maintained in full force and effect at all times insurance with respect to the Borrower and the Property as required under the Loan Agreement.

(b)    Borrower assigns to Lender all proceeds of any insurance policies against loss or damage to the Property.    Borrower authorizes Lender to collect and receive such proceeds, subject to the terms of the Loan Agreement, and authorizes the issuer of each such insurance policy to make payment for all losses directly to Lender, instead of to Borrower and Lender jointly.

(c)    Borrower assigns all awards and compensation for any condemnation or other taking or any purchase in lieu thereof, to Lender and subject to the terms of the Loan Agreement, authorizes Lender to collect and receive such awards and compensation and to give proper receipts therefor.

Section 3.5    PAYMENT FOR LABOR AND MATERIALS.    Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Property and never permit to exist beyond the due date thereof in

5

FRED BUCHOLZ        R2013-023862        DUPAGE COUNTY RECORDER

respect of the Property or any part thereof any lien or security interest (other than the Security Instrument) even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances. Borrower represents there are no claims for payment for work, labor or materials affecting the Property which are or may become a lien prior to, or of equal priority with, the liens created by the Loan Documents.

## Article 4 – PROPERTY COVENANTS

Borrower agrees and covenants with Lender:

Section 4.1    WARRANTY OF TITLE. Borrower has good title to the Property and has the right to mortgage, grant, bargain, pledge, assign, warrant, transfer and convey the same. Borrower possesses a good, marketable and insurable fee simple absolute estate in the Land and the Improvements and owns the Property free and clear of all liens, encumbrances and charges whatsoever except for those shown in the title insurance policy accepted by Lender insuring the lien of this Security Instrument (the "Permitted Exceptions"). The Permitted Exceptions do not materially interfere with the security intended to be provided by this Security Instrument or the current use of the Property. Borrower shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Lender against the claims of all persons whomsoever.

Section 4.2    MAINTENANCE OF PROPERTY. Borrower shall cause the Property to be maintained in a good and safe condition and repair. The Improvements, the fixtures and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the fixtures or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender or as otherwise permitted pursuant to the Loan Agreement. Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty, or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

Section 4.3    WASTE. Borrower shall not commit or suffer any waste of the Property, or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 4.4    TAXES. Borrower shall pay all Taxes and Other Charges assessed or imposed against the Property or any part thereof in accordance with the Loan Agreement.

6

FRED BUCHOLZ      R2013-023862      DUPAGE COUNTY RECORDER

Section 4.5   LEASES.  Borrower shall not enter in any Leases for all or any portion of the Property unless in accordance with the provisions of the Loan Agreement.

## Article 5 - FURTHER ASSURANCES

Section 5.1   FURTHER ACTS, ETC.  Borrower shall comply with any and all covenants set forth in the Loan Agreement regarding further acts and further assurances in order to protect and perfect the lien of the Security Instrument and the interest of the Lender in the Property.

Section 5.2   CHANGES IN TAX, DEBT CREDIT AND DOCUMENTARY STAMP LAWS. (a) If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any.  If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option by written notice of not less than ninety (90) days to declare the Debt immediately due and payable.  Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt.  If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

(b)   If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to any of the Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

## Article 6 - RIGHTS AND REMEDIES UPON DEFAULT

Section 6.1   REMEDIES.  Upon the occurrence of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a)   declare the entire unpaid Debt to be immediately due and payable;

(b)   institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)   to the extent permitted and pursuant to the procedures provided by Applicable Law, institute proceedings for the partial foreclosure of this Security

7

FRED BUCHOLZ       R2013-023862       DUPAGE COUNTY RECORDER

Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Loan Documents;

(f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(h)    subject to any Applicable Law, the license granted to Borrower under Section 1.2 shall automatically be revoked and Lender may, but without any obligation to do so, enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto, and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, negotiate, execute, cancel, enforce, extend, renew or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be in the possession of Borrower or any Affiliate of Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys'

8

FRED BUCHOLZ        R2013-023862        DUPAGE COUNTY RECORDER

fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)     exercise immediately and without demand any and all rights and remedies granted to a secured party upon default under the UCC, including, without limitation, to the extent permitted by Applicable Law: (i) the right to take possession of the UCC Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the UCC Collateral, and (ii) request Borrower at its expense to assemble the UCC Collateral and make it available to Lender at a convenient place acceptable to Lender.  Any notice of sale, disposition or other intended action by Lender with respect to the UCC Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action shall constitute commercially reasonable notice to Borrower.  Any disposition pursuant to the UCC of so much of the Property as may constitute UCC Collateral shall be considered commercially reasonable if made pursuant to a public sale which is advertised at least twice in a newspaper in which sheriffs' sales are advertised in the county where the Land is located.  The proceeds of any disposition of the UCC Collateral, or any part thereof, may be applied by Lender to the payment of the Obligations in such priority and proportions as Lender in its discretion shall deem proper;

(j)     apply any sums then deposited and any other sums held in reserve or otherwise by Lender in accordance with the terms of this Security Instrument or any other Loan Document, together with interest thereon, to the payment of the following items in any order in its uncontrolled discretion; (i) Taxes and Other Charges; (ii) Insurance Premiums; (iii) interest on the unpaid principal balance of the Note; (iv)amortization of the unpaid principal balance of the Note; (v) all other sums payable pursuant to any of the Loan Documents, including, without limitation, advances made by Lender pursuant to the terms of this Security Instrument;

(k)     apply the undisbursed balance of any Net Proceeds, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its sole discretion; or

(l)     pursue such other remedies as Lender may have under Applicable Law.

In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 6.2   APPLICATION OF PROCEEDS.  The proceeds of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

9

FRED BUCHOLZ       R2013-023862       DUPAGE COUNTY RECORDER

Section 6.3    RIGHT TO CURE DEFAULTS.    Upon the occurrence of any Event of Default or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof.    Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand.    All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period from that the incurrence of such cost or expense by Lender to the date of payment to Lender.    All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 6.4    RECOVERY OF SUMS REQUIRED TO BE PAID.    Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt is then due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

Section 6.5    EXAMINATION OF BOOKS AND RECORDS.    Lender, its agents, accountants and attorneys shall have the right to examine and audit the records, books, management and other papers of Borrower or of any Guarantor which reflect upon their financial condition or which pertain to the income, expenses and operation of the Property, at the Property or at any office regularly maintained by Borrower, or any Guarantor where the books and records are located at all reasonable times and, except during an emergency or following the occurrence and during the continuance of an Event of Default, upon reasonable advance notice (which may, for such purpose alone, be given orally).    Lender and its agents shall have the right to make copies and extracts from the foregoing records and other papers and, at Borrower's expense, the right to prepare any of the statements and reports that Borrower and each Guarantor shall be required to deliver hereunder upon any failure to do so.    Borrower and each Guarantor shall furnish to Lender and its agents convenient facilities for the examination and audit of such books and records.

Section 6.6    OTHER RIGHTS, ETC.    (a) The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument.    Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any Guarantor to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or

10

FRED BUCHOLZ        R2013-023862        DUPAGE COUNTY RECORDER

supplementing the terms of the Note, this Security Instrument or the other Loan Documents. Acceptance of any payment after the occurrence of a default shall not be deemed to waive or cure such default; and every power and remedy given to Lender may be exercised from time to time as often as may be deemed expedient by Lender.  Borrower hereby waives any right to require Lender at any time to pursue any remedy in Lender's power whatsoever.

(b)    It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured.  Possession by Lender shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Lender's possession.

(c)    Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect.  Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument.  The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.  Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

(d)    In the event Lender determines from time to time that the Property is not being maintained as required under this Security Instrument, Lender may require that Borrower establish a monetary reserve therefor in an amount determined by Lender, in its reasonable discretion.  Borrower hereby agrees to fully comply with any such additional requirements imposed by Lender, including, without limitation, depositing with Lender in full or in installments such sums as Lender shall determine.  Any such reserve shall be established with Lender on Lender's form of reserve agreement.

Section 6.7    RIGHT TO RELEASE ANY PORTION OF THE PROPERTY.  Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder.  This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

Section 6.8    VIOLATION OF LAWS.  If the Property is not in compliance with all Legal Requirements, Lender may impose additional requirements upon Borrower in connection therewith including, without limitation, monetary reserves or financial equivalents.  Any such reserve shall be established with Lender on Lender's form of reserve agreement.

11

FRED BUCHOLZ        R2013-023862        DUPAGE COUNTY RECORDER

Section 6.9   RIGHT OF ENTRY.   Lender and its agents shall have the right to enter and inspect the Property at all reasonable times and, except during an emergency or following the occurrence and during the continuance of an Event of Default, upon reasonable advance notice (which may, for such purpose alone, be given orally).

Section 6.10   RESTORATION OF RIGHTS.   In case Lender shall have proceeded to enforce any right by foreclosure sale, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason or shall have been determined adversely to Lender, then, in every such case, Borrower and Lender shall be restored to their former positions and rights thereunder.

### Article 7 - WAIVERS

Section 7.1   MARSHALLING AND OTHER MATTERS.   Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Applicable Law.

Section 7.2   WAIVER OF NOTICE.   Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 7.3   WAIVER OF STATUTE OF LIMITATIONS.   To the fullest extent permitted by law, Borrower hereby expressly waives and releases the pleading of any statute of limitations as a defense to payment of the Debt or performance of its other Obligations.

Section 7.4   WAIVER OF COUNTERCLAIM.   **BORROWER HEREBY KNOWINGLY WAIVES THE RIGHT TO ASSERT ANY COUNTERCLAIM, OTHER THAN A COMPULSORY OR MANDATORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST BORROWER BY LENDER OR ITS AGENTS.**

Section 7.5   WAIVER OF FORECLOSURE DEFENSE.   Borrower hereby waives any defense Borrower might assert or have by reason of Lender's failure to make any tenant or lessee of the Property a party defendant in any foreclosure proceeding or action instituted by Lender.

Section 7.6   WAIVER OF JURY TRIAL.   **BORROWER AND LENDER, TO THE FULL EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING,**

12

FRED BUCHOLZ       R2013-023862       DUPAGE COUNTY RECORDER

INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, BROUGHT BY ANY OF THEM AGAINST THE OTHER BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO OR IN CONNECTION WITH THIS SECURITY INSTRUMENT, THE LOAN OR ANY COURSE OF CONDUCT, ACT, OMISSION, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SUCH PERSON'S DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH SUCH PERSON), IN CONNECTION WITH THE LOAN OR THIS SECURITY INSTRUMENT, INCLUDING, WITHOUT LIMITATION, IN ANY COUNTERCLAIM WHICH BORROWER MAY BE PERMITTED TO ASSERT THEREUNDER OR WHICH MAY BE ASSERTED BY LENDER OR ITS AGENTS AGAINST BORROWER, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THIS WAIVER BY BORROWER OF ITS RIGHT TO A JURY TRIAL IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN.

### Article 8 – GENERAL PROVISIONS

Section 8.1    ATTORNEY'S FEES FOR ENFORCEMENT.  Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property, in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property, whether or not any legal proceeding is commenced hereunder or under any other Loan Document, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

Section 8.2    SUBROGATION.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Note and the other Loan Documents and the performance and discharge of the other Obligations.

Section 8.3    SEVERABILITY.  Whenever possible, each provision of this Security Instrument shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision shall be prohibited by or invalid or unenforceable under the applicable law of any jurisdiction with respect to any Person or circumstance, such provision shall be ineffective to the extent of such prohibition, invalidity or unenforceability, without invalidating the remaining provisions or affecting the validity or enforceability of such provisions in any other jurisdiction or with respect to other Persons or circumstances.

Section 8.4    NO ORAL MODIFICATIONS.  This Security Instrument, and any of the provisions thereof, cannot be altered, modified, amended, waived, extended, changed, discharged or terminated orally or by any act on the part of Borrower or Lender, but only by an

13

{F:\wpdocs/2954/12286/00221007.DOC:}

agreement in writing signed by the party against whom enforcement of any alteration, modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 8.5    JURISDICTION, COURT PROCEEDINGS.    EACH OF LENDER AND BORROWER, TO THE FULLEST. EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (I) SUBMITS TO PERSONAL, NONEXCLUSIVE JURISDICTION IN THE STATE OR COMMONWEALTH OF ILLINOIS WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM, RELATING TO OR IN CONNECTION WITH SUCH INSTRUMENT OR THE LOAN, (II) AGREES THAT ANY SUCH SUIT, ACTION OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN DUPAGE COUNTY, ILLINOIS, AND (III) SUBMITS TO THE JURISDICTION OF SUCH COURTS. BORROWER, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, FURTHER AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN DUPAGE COUNTY, ILLINOIS (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM), AND IRREVOCABLY AGREES NOT TO ASSERT ANY OBJECTION WHICH IT MAY EVER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT LOCATED IN ILLINOIS AND ANY CLAIM THAT ANY SUCH ACTION, SUIT OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Section 8.6    TIME OF THE ESSENCE.    Time shall be of the essence in the performance of all obligations of Borrower thereunder.

Section 8.7    GOVERNING LAW.    This Security Instrument shall be governed by, and construed in accordance with, the laws of the state or commonwealth where the Property is located, except to the extent that the applicability of any of such laws may now or hereafter be preempted by federal law, in which case such federal law shall so govern and be controlling.

Section 8.8    EXHIBITS INCORPORATED; HEADINGS.    The information set forth on the cover, the table of contents, the headings and the exhibits annexed thereto, if any, shall be deemed to be incorporated therein as a part thereof with the same effect as if set forth in the body thereof.    The headings and captions of the various articles, sections and paragraphs of such instrument are for convenience of reference only and shall not be construed as modifying, defining or limiting, in any way, the scope or intent of the provisions thereof.

Section 8.9    NOTICES.    All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Loan Agreement.

14

{F:/wpdocs/2954/12286/00221007.DOC;}

IN WITNESS WHEREOF THIS SECURITY INSTRUMENT has been executed by Borrower as of the day and year first above written.



BORROWER:

CHICAGO TITLE LAND TRUST COMPANY
NOT PERSONALLY BUT AS TRUSTEE UNDER
TRUST DATED JANUARY 4, 2000 AND
KNOWN AS TRUST NO. 1107968

By: _Kelli A. Beyer_

Name: _Kelli A. Beyer_

Its: **ASST. VICE PRESIDENT**

This instrument is executed by the undersigned Land Trustee, *above signed* not personally but solely as Trustee in the exercise of the power and authority conferred upon and vested in it as such Trustee. It is expressly understood and agreed that all the warranties, indemnities, representations, covenants, undertakings and agreements herein made on the part of the Trustee are, undertaken by it solely in its capacity as Trustee are not personally. No personal liability or personal responsibility is assumed by or shall at any time be asserted or enforceable against the Trustee on account of any warranty, indemnity, representation, covenant, undertaking or agreement of the Trustee in this instrument.

15

FRED BUCHOLZ    R2013-023862    DUPAGE COUNTY RECORDER

STATE OF ILLINOIS )
)SS
COUNTY OF COOK )

    I, the undersigned, a notary public, in and for the county and state aforesaid, DO HEREBY CERTIFY, that _Kelli A. Beyer_, personally known to me to be the ASST. VICE PRESIDENT of CHICAGO TITLE LAND TRUST COMPANY AS TRUSTEE UNDER TRUST DATED JANUARY 4, 2000 AND KNOWN AS TRUST NO. 1107968, and personally known to me to be the same person whose name is subscribed to within the Document, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument as his/her free and voluntary act and deed of said trustee, for the uses and purposes therein set forth.

    Given under my hand and official seal this 5th day of February, 2013.

> "OFFICIAL SEAL"
> SILVIA MEDINA
> Notary Public, State of Illinois
> My Commission Expires 06/28/2016

Silvia Medina

Notary Public

{F:/wpdocs/2954/12286/00221007.DOC;}

## EXHIBIT A

### Description of Land

Common Address:      7882-7890 Quincy Road, Willowbrook, Illinois 60527

PIN:                          09-26-402-011

LOT 19 IN WILLOWBROOK EXECUTIVE PLAZA, BEING A SUBDIVISION OF PART OF THE
SOUTHEAST 1/4 OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 11, EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 8, 1975 AS
DOCUMENT R75-33298, IN DU PAGE COUNTY, ILLINOIS.

{F:/wpdocs/2954/12286/00221007.DOC;}